IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL HOLLINS,**

    **Plaintiff,**

**v.**                                            **CIVIL ACTION NO. 5:09cv63**
                                                                       **(Judge Stamp)**

**WARDEN JAMES P. CROSS,**
**EXE. ASST. R. Myers**

    **Defendants,**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff, Michael Hollins, initiated this case on June 9, 2009, by filing a civil rights complaint against the above-named defendants pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On June 11, 2009, the plaintiff was granted permission to proceed as a pauper. The plaintiff paid his initial partial filing fee on August 3, 2009.

On August 5, 2009, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Summonses were issued that same day.

On November 9, 2009, the defendants filed a Motion to Dismiss. On November 10, 2009, the plaintiff was issued a Roseboro Notice. To date, more than thirty (30) days later, he has made no response. Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss.

### II. The Complaint

In his complaint, the plaintiff alleges that the defendants have "systematically circumvented the appeals process...." (Doc. 1, p. 2). The plaintiff further alleges that the defendants "have refused to follow the procedures which govern" the BOP's administrative remedy program, "[t]hereby denying Petitioner [sic] his right to due process and the opportunity to address his concerns via the administrative remedy appeals level review and through the U.S. District Court level." (Id.). For relief, the plaintiff seeks $100,000 from each of the defendants.

### III. Defendants' Motion to Dismiss

In support of their motion, the defendants allege that:

(1) The plaintiff's claims are not actionable under the Bivens theory of liability;

(2) The plaintiff's claims should be dismissed because the doctrine of *respondeat superior* is not applicable in a Bivens action;

(3) The plaintiff's claims should be dismissed for failure to exhaust all available administrative remedies;

(4) The defendants did not violate the plaintiff's First Amendment right to access the courts; and

(5) the defendants are entitled to qualified immunity.

### IV. Standard of Review

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the

2

complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded

complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the

4

nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## V. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See

---

[1] Id.

5

Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).[2]

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

Between October 28, 2008 and May 7, 2009, the plaintiff initiated administrative remedies in an effort to grieve six different issues at USP Hazelton.[3] The first administrative remedy filed by the plaintiff was Remedy ID 513462 which complained that his release date had been miscalculated. The plaintiff's Appeal to the Office of General Counsel was rejected because the appeal was not legible.

---

[2] In Woodford v. Ngo, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 93-94 (emphasis added).

[3] His effort to grieve these six issues, involved filing fourteen administrative remedies at the various levels of the grievance process.

Although the plaintiff was given the opportunity to resubmit his appeal, he did not do so. (Doc. 20-2, p.14). The second administrative remedy filed by the plaintiff was Remedy ID 515895 which complained that items of his property were lost when he was transferred from USP Coleman to USP Hazelton. This administrative remedy was the only one that the plaintiff exhausted. (Doc. 20-2, p. 16). The third administrative remedy filed by the plaintiff was Remedy ID 519895 which requested release to a Residential Reentry Center and/or approval for release gratuity. It was rejected at the regional level, and the plaintiff failed to file an appeal.(Doc. 20-2, p. 12), The fourth administrative remedy filed by the plaintiff was remedy ID 525211 which complained about untimely mail. It was rejected at the Office of General Counsel because he did not provided legible copy of his BP-9. The plaintiff was given the opportunity to submit a new appeal but failed to do so. (Doc. 20-2, p.16). The fifth administrative remedy the plaintiff filed was Remedy ID 526353 which complained that the Administrative Remedy process was not timely. The warden denied his grievance in a response dated March 2, 2009. The plaintiff appealed to the Regional level on March 13, 2009, and received a response on September 11, 2009. However, at the time the defendants filed their Motion to Dismiss in this matter, the plaintiff had yet to file an appeal to the Office of General Counsel. (Doc. 20-1, p.2). The final administrative remedy filed by the plaintiff was Remedy ID 532173 which sought referral to a "halfway" house under the Second Chance Act. His grievance was denied at the facility level, and the plaintiff did not pursue the matter at the regional level. (Doc. 20-2, p. 15).

Clearly, the only administrative remedy which pertains to the instant complaint is Remedy ID 526353 which complains that the administrative remedy process is not timely. However as noted above, the plaintiff had not filed an appeal of the Regional response to the Office of Administrative Counsel prior to the defendant's response to the complaint. Therefore, even if the plaintiff has since done so, it

7

is indisputable that he had failed to exhaust his administrative remedies on this issue before the complaint was filed, and the same should therefore be dismissed. However, even if the plaintiff had exhausted his administrative remedies, the complaint is still due to be dismissed.

**B. Failure to State a Claim**

In his complaint, the plaintiff alleges that the defendants "circumvented the [administrative remedy] appeals process," and thereby denied his right to due process and "his opportunity to address his concerns via the administrative remedy appeals level review and through the U.S. District Court level." (Doc. 1, p. 3). However, federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. Therefore, claims such as the plaintiff's, that conduct by BOP employees prevented him from pursuing his complaints through the administrative process, are not appropriate claims in a Bivens action. Instead, "the legal consequences of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies." Murphy v. Inmate Systems Management, Inc., et al., 2008 WL 793631 (S.D.W.Va.). Therefore, to the extent that the defendant's actions might have prevented the plaintiff from exhausting his administrative remedies with respect to his claims regarding the miscalculation of his release date, his desire to be released to a RRC, untimely mail, and the Second Chanced Act, he could have pursued those claims in this Court upon arguing that he had been prevented from exhausting administrative remedies.[4] However, he cannot pursue a claim only alleging fault with the administrative remedy process.

---

[4]In fact, on March 11, 2009, the plaintiff filed a habeas corpus action alleging that his sentence had not been calculated properly. That case was denied on the merits on November 25, 2009. In addition, currently pending before the court is a Bivens action challenging the computation of his sentence.

8

Furthermore, even if the plaintiff could pursue an action for the BOP's alleged interference with the administrative remedy process, the plaintiff has made only a bald assertion that he was deprived of his right to pursue claims in federal court. There is no doubt that prisoners must be allowed access to the courts that is "adequate, effective, and meaningful." Bounds v. Smith, 439 U.S. 817, 822 (1977)(holding that prisons must give inmates access to law libraries or direct legal assistance). However, to establish a claim for denial of such access, the plaintiff must allege both a denial of court access and some prejudice resulting from the denial of access. Lewis v. Casey, 518 U.S. 343, 351-352 (1996)(finding that a prison inmate retains a right to the courts but must allege that he suffered actual injury as a result of the defendant's actions to establish a constitutional violation).

In the instant complaint, the plaintiff alleges that the defendants refusal to follow BOP grievance procedures prevented him from addressing his complaints in federal court. However, the plaintiff points to no specific case which he could not file because he had not exhausted his administrative remedies. Moreover, since his September 19, 2008 designation to USP Hazelton, the plaintiff has filed six actions[5] in addition to the instant complaint, including a habeas corpus action alleging that his sentence had not been calculated properly, which was denied on the merits on November 25, 2009. In addition, currently pending before the court is a Bivens action challenging the computation of his sentence. None of the six actions have been dismissed for failure to exhaust administrative remedies. Accordingly, there is no support for the plaintiff's allegation that he has been denied his right of access to the courts.

## C. Official Capacity Claims

---

[5]Four of those actions were filed in this court: (1) 3:09cv38; (2) 2:09cv33; (3) 2:09cv69; (4) 1:09cv75; and the other two were filed in the United States District Court for the Northern District of California: (1) 3:09cv01929; and (2) 3:09cv2028.

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Truloch v. Freeh, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainbright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a Bivens case. Rizzo v. Good 423 U.S. 362 (1976).

Here, plaintiff does not allege any personal involvement on the part of the named defendants. Instead, it appears that the plaintiff has named these defendants only in their official capacities as the Warden of USP Hazelton and the Executive Assistant. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under Bivens is not available against either defendant in his official capacity, and both should be dismissed as defendants in this action.

## VII. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss (Doc. 19) be **GRANTED**, and the plaintiff's complaint be **DISMISSED with PREJUDICE.**

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 2-22-10

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE